# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HARVEY,                    )<br>                                                           )<br>           Plaintiff,                         )<br>                                                           )      Civil Action No. 05-37 Erie<br>                                                           )<br>           v.                                       )<br>                                                           )<br>JO ANNE BARNHART,              )<br>Commissioner of Social Security,   )<br>                                                           )<br>           Defendant.                     ) | |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN, J.

Plaintiff, Anthony Harvey, commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security, who found that he was not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Harvey filed an application for SSI on August 30, 2002, alleging that he was disabled since May 5, 2002 due to degenerative joint disease of the lumbar spine (Administrative Record, hereinafter "AR", at 75-77, 91).  His application was denied initially, and Harvey requested a hearing before an administrative law judge ("ALJ") (AR 63-69).  A hearing was held on July 24, 2003 and following this hearing, the ALJ found that Harvey was not disabled at any time through the date of his decision, and therefore was not eligible for SSI benefits (AR 18-30).  Harvey's request for review by the Appeals Council was denied (AR 5-8), rendering the Commissioner's decision final under 42 U.S.C. § 405(g).  The instant action challenges the ALJ's decision.  Presently pending before the Court are cross-motions for summary judgment.  For the reasons that follow, we will deny Plaintiff's motion and grant Defendant's motion.

### I. BACKGROUND

Harvey was born on September 18, 1961 and was forty-one years old on the date of the ALJ's decision (AR 22, 75).  He had a high school education, with a past relevant work history as a landscaper, laborer, floor care specialist, forklift driver, laundry service laborer, and security guard (AR 22).

On July 12, 2002, Harvey presented to the emergency room with a chief complaint of lower back pain and numbness after lifting his daughter (AR 135). He reported a history of back problems since he was eighteen years old (AR 136). On physical examination, there was no pain on palpation, his motor strength and reflexes were within normal limits, and he had no sensory deficits (AR 136). He was diagnosed with low back pain, prescribed medication, and discharged in good condition (AR 136).

Harvey began treating with Armando Ricci, D.O., on August 7, 2002 for complaints of recurrent back pain (AR 160). On physical examination, Harvey had normal muscle strength, but had decreased lumbar flexion (AR 159). Dr. Ricci recommended diagnostic testing (AR 159).

An x-ray of Harvey's lumbar spine conducted on August 10, 2002 showed minimal L5-S1 facet joint degenerative disc disease (AR 142). Satisfactory alignment and normal disc heights were observed, with normal appearing SI joints, and no significant bony abnormality was seen (AR 142). On August 12, 2002, Lipitor was added to Harvey's medication regime based on lab test results (AR 156). An MRI conducted August 19, 2002 showed mild disc bulges at L2-3 and L4-5 with no significant spinal canal or neuroforaminal narrowing (AR 144). Harvey was scheduled for a neurosurgical consultation (AR 155-156).

Harvey was examined by Elio DeMeira, M.D., on September 16, 2002 (AR 146-147). He reported a history of back and leg pain, headaches, shoulder, hip, knee, and ankle pain (AR 146). He claimed he was unable to perform any heavy activities (AR 146). Harvey stated he had no problems sitting, but standing was "a bit of a problem" for him (AR 146). Although he had problems walking, he reported he was able to walk approximately one hour at the mall over the previous weekend (AR 146). On physical examination, Dr. DeMeira found Harvey had normal tendon reflexes, no objective motor or sensory deficits, no muscle atrophy, normal lumbar lordosis, and no back spasms (AR 146).

Dr. DeMeira reviewed his MRI scan, and diagnosed developmental spinal stenosis and mild lumbar degenerative disc disease (AR 145). Dr. DeMeira considered Harvey's stenosis to be congenital and present for many years, and that mild degenerative changes were causing him to become symptomatic (AR 145). Dr. DeMeira opined that eventually Harvey would need a decompressive lumbar laminectomy, but since his symptoms were intermittent and relatively

mild, he recommended only symptomatic treatment (AR 145).

On September 23, 2002, Harvey requested a letter from Dr. Ricci detailing his back problems and any work limitations since his parole officer questioned why he was not working (AR 153). On September 25, 2002, Dr. Ricci wrote that Harvey had intermittent back pain, and that an MRI revealed mild disc bulging at L2-3 and L4-5 and mild central canal stenosis (AR 152). He did not set forth any work limitations, and indicated that Harvey required only symptomatic treatment (AR 152).

Harvey returned to Dr. Ricci on October 3, 2002 and complained of headaches with photosensitivity, and increased back pain and lower extremity numbness (AR 151). On physical examination, Dr. Ricci noted he had normal muscle strength (AR 151). Harvey was assessed with a possible migraine and prescribed Imitrex (AR 151). An EMG was scheduled for his complaints of lower extremity numbness, and physical therapy was discussed (AR 151). He was also encouraged to lose weight (AR 151).

Harvey was seen by Dr. DeMeira on October 10, 2002 for follow up, who reported that his condition was unchanged since his previous examination (AR 191). Harvey had no muscle atrophies, and his tendon reflexes were normal in both extremities (AR 191). Dr. DeMeira recommended only symptomatic treatment and advised against surgical treatment (AR 191).

On October 16, 2002, Harvey reported increased back pain and leg weakness to Dr. Ricci (AR 181). Physical therapy was recommended, as well as a pain management and neurological consultation (AR 181). Harvey was unwilling to travel to Pittsburgh for a pain management consultation (AR 181).

EMG testing conducted on October 31, 2002 revealed "very mild remote S1 radiculopathies" (AR 193).

Harvey was evaluated by Jeffrey Esper, D.O., a neurologist, on December 18, 2002 for complaints of muscle weakness and spasms (AR 187-188). He reported his symptoms had improved following discontinuance of Lipitor (AR 187). He had increased his exercises, stretching and weight lifting, and had no problem with his activities of daily living (AR 187). He claimed he intermittently experienced paresthesias of his lower extremities (AR 187). On physical examination, Dr. Esper reported he was neurologically intact with unremarkable cranial

3

nerves, had 5/5 muscle strength, symmetric reflexes, a stable gait, and was able to toe, heel and tandem walk (AR 188).

Dr. Esper opined that Harvey had a history consistent with a myopathy, most likely secondary to his Lipitor use, and was instructed not to take any cholesterol lowering agent in the future (AR 188). Dr. Esper further opined that Harvey was improving by doing exercises at home, but scheduled a physical therapy evaluation (AR 188). He indicated that Harvey's spinal stenosis did not warrant surgical intervention, but encouraged him to keep his neurological evaluation appointment scheduled in Pittsburgh (AR 188).

Harvey returned to Dr. Ricci on December 31, 2002 complaining of back pain (AR 175). He reported drinking four to five beers per day, and Dr. Ricci noted he was somewhat depressed, but Harvey refused anti-depressant medication (AR 175). Dr. Ricci advised him to cease alcohol use (AR 175).

On January 7, 2003, Harvey was evaluated by Stephen Burke, physical therapist (AR 184-186). Mr. Burke noted that Harvey used no assistive device to ambulate, and no significant deviations were noted in his gait (AR 185). He exhibited normal lordosis, had intact sensation, symmetric reflexes, no motor atrophy, and no motor deficits (AR 185). He did exhibit significantly limited forward flexion (AR 185). Mr. Burke recommended Harvey join the YMCA to perform land-based and aquatic exercise programs for conditioning, strengthening, and flexibility exercise (AR 186).

Harvey underwent nucleoplasty[1] in March 2003 to relieve back pain (AR 173). On March 26, 2003, Harvey complained of headaches and back pain, but Dr. Ricci noted he was neurologically intact (AR 171).

On April 23, 2003, Harvey complained of back pain and frequent headaches (AR 170). Dr. Ricci concluded that the headaches were probably a migraine component, and prescribed a low dose of Inderal (AR 169).

---

[1]Nucleoplasty is a minimally invasive procedure for treating individuals with low back and leg pain due to disc protrusions or herniations. The procedure involves radiofrequency energy to decompress the disc and allow for a retraction of any protrusion or herniation that may be irritating nearby nerve roots. *See Capitol Spine and Pain Centers,* http://www.treatingpain.com/pages/int_pain/nucleoplasty.html.

Harvey and Leon Reid, a vocational expert, testified at the hearing held by the ALJ on July 24, 2003 (AR 37-62). Harvey testified that he lived with his girlfriend, her two sons and his fifteen month old daughter (AR 41-42). He cared for his daughter during the day while his girlfriend worked (AR 50). Harvey claimed he suffered from a migraine headache daily, lasting two to three hours and occasionally all day (AR 47). He took medication to relieve the pain, closed the blinds and tried to decrease the noise level (AR 47). He also claimed to suffer from constant lower back pain (AR 47). Harvey testified that he experienced relief from his back pain for two or three months following nucleoplasty, but that his pain returned (AR 46). Medication erased fifty percent of the pain, and he also engaged in physical therapy at home (AR 47-48). His medication regime caused sleepiness, drowsiness and some dizziness (AR 48, 50).

Harvey testified that he could lift approximately twenty-five pounds, and that he currently lifted his daughter who was twenty-four pounds (AR 49). He was unable to lift and carry any weight all day long (AR 49). He suffered increased pain when standing, but was able to sit for approximately one half hour (AR 49). He stated he could walk for approximately four city blocks before requiring a break (AR 50). Harvey indicated he spent six hours out of an eight hour day in a recliner (AR 50). On bad days, he spent most of the time laying on the floor, but on good days, he was able to prepare dinner, straighten the living room and vacuum (AR 52).

The ALJ asked the vocational expert if work existed for an individual of Harvey's age, education, and work history, who was limited to light work with no more than simple, routine, repetitive tasks with one- or two-step instructions performed in a low stress environment that involved few decisions (AR 59). The vocational expert testified that such an individual could perform Harvey's past work as a security guard, and could perform other work that existed in significant numbers in the national economy, including work as a production inspector and assembler (AR 59-60).

Following the hearing, the ALJ issued a written decision which found that Harvey was not eligible for SSI benefits within the meaning of the Social Security Act (AR 22-27). Harvey's request for an appeal with the Appeals Council was denied making the ALJ's decision the final decision of the Commissioner (AR 5-8). He subsequently filed this action.

## II. STANDARD OF REVIEW

The Court must affirm the determination of the Commissioner unless it is not supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence does not mean a large or considerable amount of evidence, but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *see Richardson v. Parales,* 402 U.S. 389, 401 (1971). It has been defined as less than a preponderance of evidence but more than a mere scintilla. *See Richardson,* 402 U.S. at 401; *Jesurum v. Secretary of the United States Dept. of Health and Human Servs.,* 48 F.3d 114, 117 (3d Cir. 1995).

## III. DISCUSSION

A person is "disabled" within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step evaluation process to determine when an individual meets this definition:

> In the first two steps, the claimant must establish (1) that he is not engaged in "substantial gainful activity" and (2) that he suffers from a severe medical impairment. *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If the claimant shows a severe medical impairment, the [Commissioner] determines (3) whether the impairment is equivalent to an impairment listed by the [Commissioner] as creating a presumption of disability. *Bowen,* 482 U.S. at 141. If it is not, the claimant bears the burden of showing (4) that the impairment prevents him from performing the work that he has performed in the past. *Id.* If the claimant satisfies this burden, the [Commissioner] must grant the claimant benefits unless the [Commissioner] can demonstrate (5) that there are jobs in the national economy that the claimant can perform. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985).

*Jesurum*, 48 F.3d at 117. The ALJ resolved Harvey's case at the fourth step. At step two, the ALJ determined that his degenerative disc disease and headaches were severe impairments, but determined at step three that he did not meet a listing (AR 23). At step four, the ALJ determined that Harvey had the residual functional capacity to perform work that did not require exertion above the light level, with no more than simple, routine, repetitive tasks, with one- or two-step

6

instructions, performed in a low stress environment, meaning one that required few decisions (AR 23).  The ALJ concluded that Harvey's past relevant work as a security guard was within this residual functional capacity (AR 25).  The ALJ also engaged in the final step, and determined that Harvey could perform the jobs cited by the vocational expert at the administrative hearing (AR 25).  Finally, the ALJ found that Harvey's assertions regarding his functional limitations were not totally credible (AR 26).  Again, we must affirm this determination unless it is not supported by substantial evidence.  *See* 42 U.S.C. § 405(g).

Harvey fundamentally takes issue with the ALJ's finding that he can perform light work.  He generally contends that this finding is contrary to the medical evidence and his testimony.  It is undisputed that Harvey suffers from degenerative disc disease and headaches, and the ALJ specifically found that the medical evidence demonstrated these impairments were severe (AR 23).  However, disability is determined not by the mere presence of impairments, but rather by the functional restrictions placed on an individual by those impairments.  *See Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991).  Thus the critical issue is the extent of Harvey's residual functional capacity.

"'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3rd Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3rd Cir. 1999); *see also* 20 C.F.R. § 404.1545(a).  An individual claimant's RFC is an administrative determination expressly reserved to the Commissioner.  20 C.F.R. § 416.927(e)(2).  In making this determination, the ALJ must consider all evidence before him.  *Burnett*, 220 F.3d at 121.  Social Security Ruling ("*SSR*") 96-5p provides:

> The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of the evidence.

*SSR* 96-5p (1996), 1996 WL 374183 *5.

Harvey first argues that the ALJ erred in determining that he was able to perform full-time sustained work activities as required by Social Security Ruling ("*SSR*") 96-8p.  In order to

show that a claimant is in fact capable of undertaking jobs that exist in the national economy, the Commissioner must prove that the claimant retains the residual functional capacity to work on a "regular and continuing basis." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 60 (3rd Cir. 1988) (quoting *Kangas v. Bowen*, 823 F.2d 775, 777 (3rd Cir. 1987) (citing 20 C.F.R. § 404.1545(b))). Social Security Ruling ("*SSR*") 96-8p, 1996 WL 374184, defines "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent schedule." *SSR* 96-8p, 1996 WL 374184 at *2. Harvey contends that the ALJ failed to address this issue. We disagree. It is apparent from the ALJ's decision that, given his citation to *SSR* 96-8p, his RFC assessment was based upon Harvey's ability to perform work-related tasks on a regular and continuing basis (AR 23). Moreover, Harvey has failed to point to any evidence in the record which demonstrates he is precluded from performing work-related tasks on a regular and continuing basis. We therefore find this argument without merit.

Harvey also claims that the ALJ's RFC determination is not supported by the medical evidence, citing *Doak v. Heckler*, 790 F.2d 26, 29 (3rd Cir. 1986). In *Doak*, the Third Circuit concluded that the record did not support the ALJ's finding that the claimant could do light work, since the medical records fairly read suggested an inability to do so. *Doak*, 790 F.2d at 29. Here however, although no treating physician specifically expressed an opinion relative to Harvey's RFC, their medical findings were consistent with the physical limitations credited by the ALJ. As observed by the ALJ, Harvey's medical records from his various treating physicians revealed that his physical examinations were consistently unremarkable (AR 24). In addition, diagnostic studies showed only mild disc bulges at L2-3 and L4-5, and no significant spinal canal or neuroforaminal narrowing (AR 144). Lumbar spine x-rays showed normal alignment, disc heights, and SI joints, and only minimal degenerative disc disease (AR 142). An EMG and nerve conduction study revealed "very mild" remote S1 radiculopathies (AR 193).

Harvey argues that the medical evidence does not include an RFC assessment of his abilities. He suggests, in other words, that there need be direct medical evidence in the form of an opinion to support a finding that he can engage in light work. But in construing the administrative record, an ALJ may rely on what the record does *not* say, as well as what it does say. *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2nd Cir. 1983) (citations omitted). Here, the

record is conspicuously devoid of any medical evidence indicating Harvey's impairments resulted in physical limitations apart from those credited by the ALJ. Indeed, when Harvey requested a letter from Dr. Ricci detailing his condition and any work limitations, Dr. Ricci failed to identify any such limitations, and characterized his condition as "mild" and his pain as "intermittent" (AR 152-153). *See e.g., Lane v. Commissioner of Soc. Sec.*, 100 Fed.Appx. 90, 95 (3rd Cir. 2004) (unpublished opinion) (lack of medical evidence is "very strong" evidence that claimant not disabled). Harvey's argument also overlooks the fact that the final responsibility for determining an individual's RFC is reserved to the Commissioner. *Schwartz v. Halter*, 134 F. Supp. 2d 640, 650 (E.D.Pa. 2001); 20 C.F.R. § 404.1527(e). We therefore find that the ALJ's RFC determination is supported by substantial evidence.

Harvey further argues that the ALJ's decision demonstrates that he should have sought clarification of Dr. Ricci's treatment notes. The ALJ however, apparently felt that the record was sufficiently developed for purposes of ruling on Harvey's claim. Section 416.912(e)(1) provides that the Administration will take action to re-contact medical sources and obtain additional medical information where the existing evidence is insufficient to determine whether a claimant is disabled. 20 C.F.R. § 416.912(e)(1). We believe the ALJ could permissibly render a decision based upon the evidence in the present record without further development and, therefore, find no error in the ALJ's failure to re-contact Dr. Ricci for further clarification under the circumstances here.[2]

Finally, Harvey challenges the ALJ's credibility determination. An ALJ must consider subjective complaints by the claimant and evaluate the extent to which those complaints are supported or contradicted by the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1529(a). Subjective complaints must be seriously considered, whether or not they are fully confirmed by the objective medical evidence. *See Smith v. Califano*, 637 F.2d 968 (3rd

---

[2]In a related argument, Harvey contends that the ALJ failed to explain what portions of Dr. Ricci's treatment notes he accepted or rejected. This argument is difficult to discern. A review of the ALJ's hearing decision reveals that the ALJ not only reviewed Dr. Ricci's treatment notes, but thoroughly discussed his findings in connection with fashioning his RFC. The ALJ accepted Dr. Ricci's conclusions as to the severity of Harvey's impairments, and specifically found he suffered from degenerative disc disease and headaches.

Cir. 1981). The ALJ as the finder of fact can reject, partially or fully, subjective complaints if he finds them not credible based on other evidence in the record. *Baerga v. Richardson,* 500 F.2d 309, 312 (3rd Cir. 1974). The ALJ is empowered to evaluate the credibility of witnesses and his determination is entitled to deference by this Court. *See Van Horn v. Schweiker*, 717 F2d 871, 873 (3rd Cir. 1983). In his assessment of Harvey's credibility, the ALJ found that his claims of pain and functional limitations were not totally credible (AR 25).

We find no error in the ALJ's credibility assessment. The ALJ acknowledged that in his determination of Harvey's RFC, he must consider all symptoms, including pain, and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and *SSR* 96-7p (AR 23). In making his determination, the ALJ considered the medical evidence of record, as well as Harvey's testimony as to his functional restrictions (AR 23-25). We agree with the ALJ that the objective findings, as discussed earlier, do not support Harvey's allegations of disabling pain and functional limitations. For example, as noted by the ALJ, Harvey's examinations had produced straight forward results, and he exhibited good strength and mobility (AR 25). He was able to care for his young daughter, a task which required exertion beyond that described by Harvey and which contradicted his testimony that he must lie down virtually all day (AR 25).

All of the ALJ's findings are supported by the record in this regard. Moreover, we observe that the ALJ did not completely reject Harvey's testimony; indeed, he concluded that his conditions could reasonably be expected to produce some pain and functional limitations and fashioned his RFC accordingly (AR 25). We therefore find that there was substantial evidence in the record, taken as a whole, to support the ALJ's credibility determination.

## IV. Conclusion

An appropriate Order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY HARVEY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Civil Action No. 05-37 Erie |

## ORDER

AND NOW, this 11th day of August, 2005, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Plaintiff's Motion for Summary Judgment [Doc. No. 7] is DENIED, and the Defendant's Motion for Summary Judgment [Doc. No. 9] is GRANTED. JUDGMENT is hereby entered in favor of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff, Anthony Harvey.  The clerk is directed to mark the case closed.

s/ Sean J. McLaughlin<br>
United States District Judge

cm: All parties of record.